UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas Rao, an individual,

    Plaintiff,

v.

St. Jude Medical S.C., Inc.,
a Minnesota corporation; and Abbott
Laboratories, an Illinois corporation,

    Defendants.

Civ. No. 19-923 (MJD/BRT)

**REPORT AND RECOMMENDATION**

Caroline Elizabeth Bressman, Esq., Laura Farley, Esq., and Michele R. Fisher, Esq., Nichols Kaster, PLLP, counsel for Plaintiff.

Andrew M. Luger, Esq., Benjamin L. Ellison, Esq., Emily M. Peterson, Esq., and Kelly G. Laudon, Esq., Jones Day, counsel for Defendants.

BECKY THORSON, United States Magistrate Judge.

## INTRODUCTION

    Plaintiff Thomas Rao has filed a case against Defendants St. Jude Medical S.C., Inc., ("St. Jude") and Abbott Laboratories ("Abbott") asserting claims for breach of contract, age discrimination, and unlawful retaliation as a result of the alleged wrongful termination of Plaintiff in breach of his employment agreement. (*See generally* Doc. No. 66, Second Am. Compl.) Plaintiff also asserts Defendants failed to pay him his full salary, bonuses, and commissions – both those earned prior to his termination and those he would have earned if he had worked through the balance of his contract. (*Id.*) In addition, Plaintiff seeks declaratory relief that the non-competition provision contained in

his employment agreement is unenforceable. (*Id.*) In total, Plaintiff alleges nine counts in his Second Amended Complaint.[1] (*Id.*)

This matter is before the Court on Defendants' Motion for Partial Dismissal of Second Amended Complaint. (Doc. No. 70.) Defendants argue that (1) Plaintiff's claim for violation of the Minnesota Payment of Wages Act (Count II) should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); (2) Plaintiff's claim for negligent hiring (Count V) should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1(a) and based on Plaintiff's concession; and (3) that Plaintiff's claim for declaratory judgment that his non-competition agreement with Defendants is "overly broad in duration, scope, and geography, and not reasonably tailored to protect Defendants' legitimate business interests" (part of Count IV) should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[2] (*Id.*) The motion has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. (Doc. No. 77.) On April 29, 2020, this Court held a hearing on the matter and counsel appeared on behalf of each party. (*See* Doc. No. 93.) For the reasons

---

[1] The nine counts asserted in the Second Amended Complaint are as follows: breach of contract (Count I); unpaid wages under the Minnesota Payment of Wages Act ("MPWA") (Count II); retaliation under Florida whistleblower law (Count III); declaratory relief (Count IV); negligent hiring (Count V); age discrimination under the Age Discrimination in Employment Act (Count VI); retaliation under Title VII (Count VII); age discrimination under Florida law (Count VIII); and retaliation under Florida civil rights law (Count IX).

[2] Defendants do not argue for dismissal of the part of Plaintiff's declaratory-judgment claim that relies on his allegation that he was wrongfully terminated and
(Footnote Continued on Next Page)

stated below, this Court recommends that Defendants' motion be granted in its entirety.

## DISCUSSION

### A. Standard of Review – Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

A Rule 12(b)(1) motion to dismiss can either (1) attack the complaint's claim of jurisdiction on its face or (2) attack the factual basis for jurisdiction. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A facial challenge to subject-matter jurisdiction argues that factual allegations made in a complaint—even if truthful—are insufficient to establish jurisdiction. *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001). When analyzing a facial challenge to jurisdiction, the Court considers the pleadings alone. *Id.* By contrast, where a defendant mounts a "factual attack" on the plaintiff's complaint, the court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards in the sense that the court may not presume the factual allegations in the plaintiff's complaint are true. *Osborn v. United States*, 918 F.2d 724, 730, n.6 (8th Cir. 1990). Plaintiff bears the burden of proving that jurisdiction exists. *Id.*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain

---

(Footnote Continued from Previous Page)

therefore the enforcement of the non-compete would be precluded.

facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. In applying this standard, the Court must assume the facts in the complaint to be true and must construe all reasonable inferences from those facts in the light most favorable to the plaintiff. *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012). But the Court need not give effect to those allegations that simply assert legal conclusions. *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### B. Analysis

#### a. COUNT II – violation of the Minnesota Payment of Wages Act

As pleaded in Plaintiff's Second Amended Complaint, Plaintiff is a Florida resident and he started working for St. Jude in 1999. (Doc. No. 66, Second Am. Compl. ¶¶ 3, 17.) St. Jude is a Minnesota corporation. (*Id.* ¶ 4.) There are no allegations in the Second Amended Complaint that Plaintiff ever lived or worked in Minnesota at any time.

In October 2016, Plaintiff entered into a term-of-year employment agreement with St. Jude regarding his position as a Senior Sales Representative for Cardiac Rhythm Management ("CRM") products and he was assigned a "Territory" in the State of Florida for his CRM sales. (*Id.* ¶¶ 19, 20; Doc. No. 69, Ex. 2 ("Employment Agreement"), Product Addendum A at ¶ D.) The Employment Agreement details Plaintiff's annual base

salary and earnings through commissions, bonuses and other benefits. (Second Am. Compl. ¶¶ 21–25.) That Agreement also had a Minnesota choice-of-law provision, which stated, "This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction." (Second Am. Compl. ¶ 167; *see* Employment Agreement ¶ 10(G).) Plaintiff makes various allegations about what occurred during his employment with St. Jude, which he claims supports some of the counts asserted in his Second Amended Complaint. (*See* Second Am. Compl. ¶¶ 35–115.) Ultimately, Plaintiff was terminated from his employment on December 14, 2019. (*Id.* ¶ 105.) He alleges that when Defendants terminated him, they breached his Employment Agreement. (*Id.*) He also alleges that Defendants have failed to pay in full his outstanding wages, bonuses, and commissions owed for November and December 2018, and have not reimbursed him in full for reasonable business expenses that were included in the last expense report he submitted prior to his termination. (*Id.* ¶¶ 114–15, 126.)

Defendants argue that Plaintiff's claim under the Minnesota Payment of Wages Act ("MPWA") (Count II) should be dismissed because Plaintiff lacks standing to maintain a claim for unpaid wages and commissions under the MPWA since he is a Florida resident who has never lived or worked in Minnesota. "[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (citation omitted). "Subject matter jurisdiction . . . is a threshold requirement

5

which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). When a party brings a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the burden of establishing jurisdiction rests on the party invoking federal jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) ("The burden of proving subject matter jurisdiction falls on the plaintiff."). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

To determine whether Plaintiff has standing to assert this claim, the Court must determine whether the MPWA's protections apply to him as an out-of-state employee. Plaintiff argues that they do because the MPWA does not have explicit language that limits its application to in-state workers, and, even if it did, the statute should apply to him nonetheless because he contracted for it through his Employment Agreement, which contains a Minnesota choice-of-law provision. This Court disagrees with Plaintiff on both fronts.

### (i) The Statute

First, under Minnesota law, "[t]here is a general presumption that Minnesota statutes do not apply extraterritorially." *Cruz v. Lawson Software, Inc.*, No. 08-CV-5900 (MJD/JSM), 2009 WL 10711629, at *5 (D. Minn. May 21, 2009) (citing *In re Pratt*, 18 N.W.2d 147, 153 (Minn. 1945); *see also Arnold v. Cargill, Inc.*, No. Civ. 012086 (DWF/AJB), 2002 WL 1576141, at *2 (D. Minn. July 15, 2002) ("While protecting against the potential conflict of law that could arise if one state's statute were to be

applied to persons within the borders of another state, such a presumption also serves 'to avoid running afoul of the Commerce Clause of the United States Constitution.'" (quoting *Union Underwear Co. v. Barnhart*, 50 S.W.3d 188, 193 (Ky. 2001))). Therefore, to overcome this presumption, the legislature must expressly state that a statute extends to employees working outside of Minnesota. *See Arnold*, 2002 WL 1576141, at *2 (referencing the Minnesota Worker's Compensation Act, which does provide for extraterritorial application). Here, the MPWA (like the Minnesota Fair Labor Standards Act ("MFLSA") addressed in *Cruz v. Lawson Software, Inc.*) "does not contain a provision explicitly extending extraterritorial application of the statute to persons working outside of Minnesota." *See Cruz*, 2009 WL 10711629, at *6.

Also, like the MFLSA, the MPWA does have some language that indicates the legislature's intent to have the statute apply only to employees working within Minnesota.[3] The MPWA's penalty provision, for example, states: "When any employer ***employing labor within this state discharges an employee***, the wages or commissions

---

[3] *See Cruz*, 2009 WL 10711629, at *6 (finding the MFLSA did not apply to plaintiff employees who had worked for a Minnesota-based company outside of Minnesota). The limiting language referenced in the MFLSA is even less explicit than that in the MPWA. *See id.* (noting a provision in the MFLSA that grants "the Commissioner the power to enforce the MFLSA by inspecting the place of business and records 'of any employer of employees working in the state.'" (quoting Minn. Stat. § 177.27, subd. 1)). While the MFLSA and the MPWA are two separate statutes, as noted in *Cruz*, the Minnesota Supreme Court has stated that the MPWA and MFLSA "'provide a comprehensive statutory scheme for wages and payment in Minnesota and should be interpreted in light of each other.'" *Id.* (quoting *Milner v. Farmers Ins. Exchange*, 748 N.W.2d 608, 617 (Minn. 2008)).

actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee." Minn. Stat. § 181.13(a) (emphasis added).[4] In addition, the MPWA's provision regarding payment and wage protections for commission salespersons states: "When any person, firm, company, association, or corporation ***employing a commission salesperson in this state terminates the salesperson***, or when the salesperson resigns that position, the employer shall promptly pay the salesperson . . ." Minn. Stat. § 181.145, subd. 2 (emphasis added).[5] While other provisions use neutral language regarding the person filing suit,[6] the limiting language referenced above cannot be ignored. When a Minnesota statute contains language limiting its application to employees working in Minnesota, and does not otherwise have explicit language stating that the statute is to be applied extraterritorially, then courts will apply that limitation.[7]

---

[4] Plaintiff asserts that this provision is focused on the employer, and the employer having to employ at least some labor in this state for it to be subject to the MPWA. This Court disagrees. This provision instead, when considered along with Minnesota's presumption that its statutes are not to be applied to persons within the borders of another state, addresses discharges of employees within the state.

[5] Although Plaintiff was not an independent contractor commission salesperson, consideration of all the provisions in the statute together is instructive as to whether the statute is consistent with the presumption that it does not apply extraterritorially. Plaintiff concedes that this part of the statute "limit[s] the statute to only those people working in Minnesota." (Doc. No. 78, Pl.'s Opp'n 14.)

[6] *See* Minn. Stat. § 181.171, subd. 1 (stating that "[a] person may bring a civil action for redress for violations of sections . . .").

[7] Furthermore, even if the Court were to conclude that the language in the MPWA does not affirm that it is only applicable to in-state employees, Minnesota's presumption against extraterritorial application still applies even without such affirmative language.
(Footnote Continued on Next Page)

*See Cruz*, 2009 WL 10711629, at *6 (stating there is "simply no authority" in the statute to apply the MFLSA to "employees who are not Minnesota residents and have not worked or lived in Minnesota"); *Arnold*, 2002 WL 1576141, at *3 (stating that the Minnesota Human Rights Act's references to "persons in the state" indicate it was intended to apply only to persons within Minnesota).

Here, based on the presumption against extraterritorial application and the language in the MPWA, this Court concludes the MPWA does not apply to a plaintiff who is not a resident of Minnesota and has neither lived nor worked in Minnesota. Because Plaintiff has not pled that he was a resident of Minnesota or worked in Minnesota at any time during his employment, he does not have standing to assert a claim under the MPWA and the Court recommends dismissing Count II of the Second Amended Complaint.

### (ii) The Choice-of-Law Provision

Plaintiff's Employment Agreement with St. Jude had a Minnesota choice-of-law provision, which stated, "This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction." (Second Am. Compl. ¶ 167; *see* Employment Agreement ¶ 10(G).) Plaintiff argues that

---

(Footnote Continued from Previous Page)

*See In re Pratt*, 18 N.W.2d at 153; *cf. Buche v. Liventa Bioscience, Inc.*, 112 F. Supp. 3d 883, 888 (D. Minn. 2015) (finding the protections of the Pennsylvania Wage Payment and Collection Law inapplicable to an employee working outside Pennsylvania, despite the absence of any language limiting the statute from extraterritorial application).

9

this choice-of-law provision is sufficient to create the requisite standing to assert a claim under the MPWA. He claims that he has contracted to receive the protections under the MPWA; stated another way, he is arguing that this choice-of-law provision is his ticket to the protections the MPWA provides. This Court disagrees. A party cannot contract around what the legislature has already proscribed.

Plaintiff cites no case where the MPWA has been applied extraterritorially to an out-of-state worker pursuant to a choice-of-law provision in a contract. Instead, the cases that Plaintiff cites to for support are all non-precedential and otherwise distinguishable. Some of the cases are from states that do not have the same presumption against extraterritorial application of its statutes as Minnesota, and some cases relate to situations where the underlying state statute contains no language indicating that it is to be limited to in-state persons. As stated above, the MPWA includes language indicating that it is so limited. The one case that Plaintiff relies on for the proposition that parties can contract for the extraterritorial application of a statute through a choice-of-law provision, even when the state statute limits its protections to persons employed in that state, is a district court case out of the Southern District of New York, *Levinson v. Prime Media, Inc.*, No. 02 Civ. 2222 (DAB), 2007 WL 2298406, at *12 (S.D.N.Y. Aug. 9, 2007) – again, not precedent. There simply is no Minnesota case that says that a Minnesota choice-of-law provision in a contract will require the MPWA to be applied extraterritorially.

Instead, Minnesota courts have concluded that general choice-of-law provisions in contracts **do not** alter the language in a statute or add language to a statute, and do not

provide immediate access to all protections under a statute; instead, when agreeing to a choice-of-law provision, the parties agree that a given state's laws will apply as written. *See Buche v. Liventa Bioscience, Inc.*, 112 F. Supp. 3d 883, 888 (D. Minn. 2015) (rejecting out-of-state employee's argument that the Pennsylvania wage statute should apply based on his Pennsylvania choice-of-law provision even when there was no presumption to not apply state statutes extraterritorially and when the language in the statute did not provide explicit limiting language); *see also North Coast Technical Sales, Inc. v. Pentair Technical Prods., Inc.*, No. 12-CV-1272, 2013 WL 785941, at *2–3 (D. Minn. Mar. 4, 2013) (stating that "this Court must apply the statues enacted by the Minnesota Legislature and the opinions issued by the Minnesota Supreme Court *as they are written*") (emphasis in original); *Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 817, 819–20 (D. Minn. 2012) (declining to apply Minnesota statutory law to an out-of-state employee when the MHRA was limited in application to employees in Minnesota, even when a Minnesota choice-of-law provision applied under the employment agreement). Although the MPWA is not the statute at issue in the decisions by these Minnesota courts, the general reasoning regarding the effect of a choice-of-law provision should apply regardless of which Minnesota statute is at issue, and the Court finds these cases persuasive.

In particular, this Court agrees with the reasoning provided by United States District Judge Patrick J. Schiltz in the *Buche* case. In *Buche*, the dispute involved the Pennsylvania Wage Payment and Collection Law ("WPCL") and a Pennsylvania choice-

of-law agreement. Even though the WPCL was unclear whether it applied to employees outside the state, and Pennsylvania did not have a presumption against extraterritorial application as Minnesota statutes do, Judge Schiltz dismissed the plaintiff's claims because he did not work or live in Pennsylvania, rejecting the argument that the plaintiff's Pennsylvania choice-of-law provision in his employment contract could expand the scope of the Pennsylvania WPCL. Quoting the *North Coast* decision, Judge Schiltz rejected the plaintiff's argument, stating:

> This view . . . reads too much into a generic choice-of-law clause. The choice-of-law clause in the Pentair-North Coast contract dictates that this Court must apply the laws of the State of Minnesota—that is, that this Court must apply the statutes enacted by the Minnesota Legislature and the opinions issued by the Minnesota Supreme Court *as they are written*. But the choice-of-law clause does not *change* those statutes and judicial decisions. If, for example, the MTSRA provided that it protected only sales representatives who sold automobiles or who employed fewer than 15 people—and if North Coast did not sell automobiles or did not employ fewer than 15 people—then North Coast would not be protected under the MTSRA, even though its contract with Pentair includes a Minnesota choice-of-law clause. Again, the choice-of-law clause *applies* Minnesota law; it does not *change* Minnesota law.

*Buche*, 112 F. Supp. 3d at 888 (quoting *North Coast*, 2013 WL 785941, at *2) (emphasis in original). Judge Schiltz then applied that same reasoning to the Pennsylvania wage statute:

> Similarly, in this case, this Court must apply Pennsylvania law because of the choice-of-law clause in the employment contract between Buche and Liventa. But the Court must apply Pennsylvania law according to its own terms. The WPCL does not provide a cause of action to employees who work outside of Pennsylvania, and thus, even it if this dispute is governed by Pennsylvania law, Buche cannot recover under the WPCL.

*Id.*

Even though this case involves a different statute—the MPWA—the Minnesota choice-of-law provision here, like the choice-of-law provision in *Buche*, which was negotiated between two private parties, does not grant the out-of-state party the protections of a Minnesota statute that, as written, applies only to in-state residents or workers. "Again, the choice-of-law clause *applies* Minnesota law; it does not *change* Minnesota law." *Buche*, 112 F. Supp. 3d at 888 (quoting North Coast, 2013 WL 785941, at *2) (emphasis in original). As explained above, the MPWA does not apply to a person who is not a resident of Minnesota and has neither lived nor worked in Minnesota. Because Plaintiff is an out-of-state resident and worker and private parties cannot expand the scope of Minnesota statutory law with a contractual choice-of-law provision,[8] Plaintiff's argument fails, and Defendants motion to dismiss Plaintiff's claim under the Minnesota Payment of Wages Act (Count II) should be granted.

---

[8] This Court notes, as the court in *Buche* did, that this may mean that a party who agrees to a choice-of-law provision in an employment agreement may be giving up some of their rights that they may otherwise have if another state's law applied. *See Buche*, 112 F. Supp. 3d at 887 ("Every day, however, people enter into contracts in which they give up some of their rights."). This does not make the outcome inherently unfair. *See id.* (stating that the plaintiff "does not explain why rights under a wage-protection law should be unwaivable, when Americans have the freedom to waive countless other rights that would seem equally or more important"). And here, even though the MPWA does not apply to Plaintiff because he lives and works out of state, he is not completely without a remedy for his alleged unpaid compensation since he has also pled a breach-of-contract claim (Count I).

### b. COUNT V – negligent hiring

During the meet and confer process regarding Defendants' motion to dismiss, Plaintiff agreed that Count V should be dismissed with prejudice. (Doc. No. 72.) Plaintiff confirmed the same in his brief submitted before the Court. (Doc. No. 78, Pl.'s Opp'n 1 n.2 (stating that Plaintiff "does not oppose dismissal of the negligent hiring claim").) Based on the parties' agreement, this Court recommends that Count V be dismissed with prejudice.

### c. COUNT IV (partial) – declaratory judgment/non-compete agreement

Plaintiff has pleaded as part of his declaratory judgment claim that his non-competition agreement with Defendants is "overly broad in duration, scope, and geography, and not reasonably tailored to protect Defendants' legitimate business interests." (Second Am. Compl. ¶ 188.) Defendants request dismissal of this portion of the declaratory judgment claim asserting that Plaintiff has not pled facts to support this part of the claim.[9]

With regard to non-competition, the Employment Agreement provided as follows:

---

[9] Defendants also contend that this allegation should be dismissed because courts in this district have enforced the same non-compete agreement previously, citing *St. Jude Med. S.C., Inc. v. Hasty*, No. 06-4547, 2007 WL 128856, at *7–9 (D. Minn. Jan. 12, 2007), and *St. Jude Med. S.C., Inc. v. Ord*, No. 09-738, 2009 WL 973275, at *4 (D. Minn. Apr. 10, 2009). Because this Court concludes that Plaintiff's claim, as pleaded, fails to state a claim as explained below, it need not address this additional argument. However, the Court notes that while these cases are persuasive, they do not necessarily preclude a newly asserted claim under the same non-compete language if the facts alleged could plausibly show that the application of the provision to a particular plaintiff would be vague or overly broad.

> Non-Competition. During [Rao's] employment and for a period of one (1) year after the date of termination of employment with [Defendants] for any reason, [Rao] will not directly or indirectly sell, demonstrate, promote, solicit or support the sale of, support or supervise the implantation or other use of, or otherwise have any involvement with the sale or use of any product which competes with any products which [Rao] sold or solicited the sale of during his/her employment, to or with any customer upon whom [Rao] called during the last year of his/her employment. For a period of one (1) year after the date of termination of employment with [Defendants] for any reason, [Rao] will not directly or indirectly influence or attempt to influence such customers to direct their business involving products sold by [Rao] to any competitor of [Defendants].

(Second Am. Compl. ¶ 28; *see* Doc. No. 69, Ex. 2, ¶ 8.) In summary, the non-compete provision "restricts Rao from selling products competitive to those he sold, to customers to whom he sold them during his last year of employment, for a period of one year." (Doc. No. 78, Pl.'s Opp'n 3 n. 3.)

"In determining whether to enforce a particular noncompete or agreement or provision, the court balances the employer's interest in protection from unfair competition against the employee's right to earn a livelihood." *Kallok v. Medtronic*, 573 N.W.2d 356, 361 (Minn. 1998). Four factors determine whether a noncompete agreement is reasonable: "(1) whether the restraint is necessary for the protection of the business or goodwill of the employer; (2) whether the restraint is greater than necessary to adequately protect the employer's legitimate interests; (3) how long the restriction lasts; and (4) the geographic scope of the restriction." *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 774 (D. Minn. 2015).

Plaintiff argues that this issue is not ripe for adjudication at the Rule 12 stage because he needs discovery "to allege a legitimate interest of Defendants and whether their non-competes are reasonably circumscribed to protect that interest." (Doc. No. 78, Pl.'s Opp'n 21.) Plaintiff also states that he is "no longer opposing the reasonableness of the geographical area or term,"[10] but rather his issue is with the "scope of 'competing product' and whether the agreement is reasonably tailored to protect Defendants' legitimate business interests[.]" (*Id.* at 21 and n. 9.)

On a Rule 12(b)(6) motion, this Court need not determine whether the non-compete language is in-fact overly broad with respect to what "competing products" means or whether it is tailored to protect Defendants' legitimate business interests; this Court need only determine whether Plaintiff has pleaded a plausible claim for relief. Plaintiff's non-compete, which is incorporated into the Second Amended Complaint, states that the competing products would be products that compete with those "which [Plaintiff] sold or solicited the sale during [his] employment." Plaintiff has pleaded no facts that would indicate that this group of products would be too broad to further define or identify. In other words, Plaintiff has not pleaded facts that would support the contention that he does not know what products compete with those he sold. Instead, rather than explaining (or pleading) what Plaintiff perceives the problem is with defining the "competing product" in his case, he candidly states that he "seeks to preserve the right

---

[10] Because Plaintiff has represented that he no longer opposes the reasonableness of the geographical area or term from the non-compete agreement, those claims from his
(Footnote Continued on Next Page)

16

to assert the scope of the non-compete is unreasonable in the event Defendants take the position in a counterclaim that he purportedly violated it by selling products or services that compete with those he sold for the company[.]" (Pl.'s Opp'n 21 and n. 9.) Simply put, Plaintiff's Second Amended Complaint, which alleges one sentence in support of his overbreadth claim—"[T]he Non-Competition Provisions are overly broad in duration, scope, and geography, and not reasonably tailored to protect Defendants' legitimate business interests" (Second Am. Compl. ¶ 188)—is conclusory and insufficient to support his request for declaratory judgment that his non-compete agreement is overly broad and therefore unenforceable.

For all of the above reasons, Defendants' motion to dismiss should be granted.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Partial Dismissal of Second Amended Complaint. (Doc. No. 70) be **GRANTED** as follows:

    a. Court II (the MPWA claim) be dismissed with prejudice;

    b. Count V (the negligent hiring claim) be dismissed with prejudice;

    c. Count IV (the declaratory judgment claim), to the extent Plaintiff alleges his non-competition agreement with Defendants is overly broad

---

(Footnote Continued from Previous Page)

Complaint should be dismissed.

in duration and geography be dismissed with prejudice, and to the extent Plaintiff alleges his non-competition agreement with Defendants is overly broad in scope and not reasonably tailored to protect Defendants' legitimate business interests be dismissed without prejudice.

Date:  May 26, 2020                         *s/ Becky R. Thorson*
                                            BECKY R. THORSON
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.